# IN THE BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF INDIANA HAMMOND DIVISION

## APPEAL FROM THE UNITED STATES BANKRUPTCY COURT TO THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA

In re: Jacqueline Sterling, debtor
        PLAINTIFF APPELLANT

v                                           2016 CV 384-JD
                                            Honorable Jon E DeGuilio
Southlake Nautilus Health & Racquet
Club, Inc., Austgen Kuiper & Associates,
David Austgen
        DEFENDANT APPELLEE

Appeal from the Honorable J Philip Klingeberger, Judge Presiding,  2009 B 24206-JPK,
Adversary No 12-02102

## PLAINTIFF APPELLANT BRIEF AND ARGUMENT

Oral Argument Requested

Samuel A. Shelist
Attorney for Plaintiff Appellant Sterling
Shelist Law Firm LLC
29 East Madison Street., Suite 1000
Chicago, IL 60602
312 644 3900

## TABLE OF CONTENTS OF THE APPEAL TO THE DISTRICT COURT FROM THE NORTHERN DISTRICT OF INDIANA, HAMMOND

**INTRODUCTION**     **1**

**STANDARD OF REVIEW**     **1**
*In re Taylor,* 526 BR 719 at 725 (ND Ill., 2014)     1
*Fillmore v Page,* 386 F 3d 496 at 503 (7th Cir., 2004)     1
**JURISDICTION**     **1**

**PARTIES TO THE LITIGATION**     **1**

**THERE IS A FULL RECORD OF PROCEEDINGS BEFORE THE BANKRUPTCY COURT**     **2**

**OVERVIEW OF THE ISSUES PRESENTED ON APPEAL**     **2**

**OVERVIEW OF THE FACTUAL BACKGROUND**     **4**
*Cox v Zale Delaware,* 239 F 3d 910 at
916 (7th Cir., 2001)     5

**NATURE OF THE PROCEEDINGS BELOW**     **6**

**WILLFULLNESS DOES NOT REQUIRE INTENT TO HARM; ALL IT REQUIRES IS THAT THE ACTOR ACTED WITH PURPOSE AND NOT 'ACCIDENT'; HERE, THE DEFENDANTS ASKED THE STATE COURT TO ARREST STERLING IN ORDER TO FORCE HER TO PAY THE DEBT**     **7**
*In re Barr,* 457 BR 733 at 734 (ND Ill., 2011)     8
*Randolph v IMBS,* 368 F 3d 726 at 728 (7th Cir., 2004)     8

**THERE IS NO DISPUTE THAT SOUTHLAKE RECEIVED THE BANKRUPTCY NOTICE AND DISCHARGE NOTICE WHICH WAS SENT AND ADDRESSED BY THE MATRIX TO THE CORRECT ADDRESS**     **8**
*In re Glenwood Medical Group,* 211 BR 282 at 284-7
(ND Ill., Eastern Div., 1997)     8
*In re Malandra,* 206 BR 667 at 673 (ED NY., 1997)     9
*In re Longardner & Assoc.,* 855 F 2nd 455 at 459
(7th Cir., 1987)     9

*In re Kingen v Johnson, Bunce & Noble.,* 2004 WL
298609 (CD., ILL)                                          9

**SOUTHLAKE 'DELEGATED' THE ENTIRE MATTER IN
COURT TO THEIR AGENT, AUSTGEN; SOUTHLAKE'S
ORDINARY COURSE OF BUSINESS WAS TO SEND THE
NOTICES ONTO THE LAW FIRM                                  9**

**AUSTGEN AND SOUTHLAKE SHOULD BE HELD
JOINTLY RESPONSIBLE; THEY CHOSE A RECKLESS
COURSE OF BUSINESS THAT LEAD TO A INCAERCERATION
AND ARREST IN A DECADES LONG JOINT EFFORT
AT COLLECTION FROM STERLING                               11**

*Buckner v Atlantic Plant Maintenance,* 182 Ill 2nd
12 (1992)                                                 12

*In Re Vazquez v Sears Roebuck & Co.,* 221 BR 222
at 231 (ND Ill., 1998)                                   12,15

*In re McClure,* 430 BR 358 at 366 (ND Texas, 2010)       13

In *In Re Walker,* 180 B.R. 834 at 844-5 (WD
Louisiana, 1995)                                         13,14

**THERE IS NO AFFIRMATIVE DENIAL OR PROOF THAT
AUSTGEN DID NOT GET THE NOTICES REGULARLY
SENT TO THEM BY SOUTHLAKE; SOUTHLAKE SAID
THEY REGULARLY SENT THEM TO AUSTGEN        16**

**CONCLUSIONS                                             18**

**SEPERATELY BOUND VOLUMES**

**APPENDIX - I**

| | | |
|---|---|---|
| "A" | 4Y | Adversary Complaint |
| "B" | 5E | Southlake Adversary Answer |
| "C" | 5F | Austgen Adversary Answer |
| "D" | | Memorandum Opinion |
| "E" | | Notice of Appeal |
| "F" | | Adversary Docket |
| "G" | | Sterling Rule 7052 Memorandum |
| "H" | | Sterling Rule 7052 Statement of Facts |
| "I" | | Trial Exhibit Book Table of Contents |
| | 3U | Matrix |
| | 3V | Discharge |
| | 3W | Rule |
| | 3X | Body attachment |

| 3Y | attachment status |
| 4C | Arrest suspension Horseshoe Casino |
| 4I | 'claim notes' |
| 5H | Austgen Interrogatory Answers |

## **APPENDIX – II**

| "J" | TRANSCRIPT OF THE TRIAL |

## INTRODUCTION

Jacqueline Sterling, a Chapter 7 debtor, was discharged of all her debts. Subsequent to the discharge, she was arrested and incarcerated in jail for three days. The arrest was based on a state Court writ of arrest issued at the request of a creditor seeking to collect a debt from Sterling. Sterling seeks a contempt citation against both the creditor and their lawyers.

## STANDARD OF REVIEW

This federal district court has jurisdiction to hear appeals from final ruling of the Bankruptcy Court. Legal findings are reviewed *"de novo"* and factual findings for *"clear error"*. The Bankruptcy Court abused its discretion when it made a ruling premised on incorrect legal principles or clearly erroneous factual findings. *In re Taylor,* 526 BR 719 at 725 (ND Ill., 2014). *Fillmore v Page,* 386 F 3d 496 at 503 (7th Cir., 2004) applies the same standard to a judgment based on a directed verdict under Rule 52(c) such as the one issued by the lower court here.

## JURISDICTION

The Bankruptcy Court ruled on August 25, 2016 and the Notice of Appeal was filed August 30, 2016. This federal district court has jurisdiction to hear this appeal.

## PARTIES TO THE LITIGATION

Jacqueline Sterling ("Sterling") is the Chapter 7 debtor and adversary plaintiff. Southlake Nautilus Health & Racquet Club ("Southlake") was a creditor of Sterling. Southlake hired Austgen Kuiper & Associates ("Austgen"), attorneys,

1

to collect from Sterling in state Court. David Austgen is the principal of the firm. Sterling sought a contempt citation and damages against Austgen and Southlake for violation of the discharge injunction. Austgen and Southlake are defendants in this adversary, 12-02102.

## THERE IS A FULL RECORD OF PROCEEDINGS BEFORE

## THE BANKRUPTCY COURT

The matter proceeded to Trial below and was transcribed. At the Bankruptcy Court's specific instance and request, the transcript was transcribed and filed by the clerk. Sterling filed a Trial Book of Exhibits which contained a Table of Contents which we have appended here. The defendants made Oral Rule 52(c) motions for a directed finding at the Close of the Sterling's case. The Court heard limited argument and asked for simultaneous briefs, which were submitted. Sterling filed a sixteen-page Proposed Rule 7052 Findings of Fact along with a twenty-five page Rule 7052 Legal Memorandum, which we have appended and rely upon here. The Court issued a preliminary opinion denying sanctions. The Court issued a final Memorandum on August 25, 2016, which is appended.

## OVERVIEW OF THE ISSUES PRESENTED ON APPEAL

The creditor, Southlake, received the bankruptcy notice and the discharge notice. However, the creditor itself did not go into state Court and request the writ to arrest Sterling. The lawyer, Austgen, went into state Court and requested the writ to arrest Sterling on behalf of Southlake in order to force collection. Austgen went into state Court to request the writ to arrest Sterling in order to earn a

2

contingency fee for themselves. Southlake as part of their ordinary course of business sent the bankruptcy notices to Austgen, their attorneys. Neither Southlake nor Austgen docketed or logged in receipt or mailing of bankruptcy notices. Although Austgen denied 'seeing' any bankruptcy notices in their physical 'collection file' for Sterling, the physical collection folder is missing, and this was not a denial that the firm had not received the notices by mail.

The *issue is whether* these defendants are *jointly and severally* liable for the consequences of their *joint* actions; the trial Court below held that the creditor is not responsible for the acts of their agent and the agent is not responsible for the acts of their principal, thus, *both* escape responsibility for Sterling's arrest and incarceration in violation of the discharge injunction. *Sterling argues this is a clear misapprehension of the law.*

If the independent conduct of two parties, when compounded, results in foreseeable harm to another, the parties are jointly and severally liable to the victim for his or her damages. As to the argument that neither Southlake nor Austgen is liable because the violation of <u>section 524(a)(2)</u> by each could not have occurred but for the improper acts or omissions of the other, to accept such an argument would insulate Southlake and Austgen from liability for violation of <u>section 524(a)(2)</u> (or 362(a)) any creditor using a collection agent, as well as the agent itself. The trial Court's refusal to jointly and severally condem Southlake

3

and Austgen for their joint actions in furtherance of collection (and fees) strips Sterling of her protections under the Bankruptcy Code and leaves here unjust and illegal arrest uncompensated and unpunished. This is a legal issue and the trial Court below erred.

## OVERVIEW OF THE FACTUAL BACKGROUND

This case involves the arrest and incarceration of a discharged debtor by a creditor attempting to collect pre-petition and discharged eleven-year old debt[1]. Jacqueline Sterling was arrested in March of 2011 and spent three days in Lake County jail.

Sterling was arrested based on a writ of attachment that had been issued nearly a year previously but subsequent to the Bankruptcy. A money judgment had been entered for Southlake Nautilus Health & Racquet Club ("Southlake") for some $518.00 in July of 2001, some ten years prior. With attorney fees and costs the judgment was eventually some $957.00. Sterling filed her Chapter 7 Bankruptcy on September 30, 2009. Supplemental proceedings continued to be issued on December 14, 2009. Sterling was discharged of all her debts, including the Southlake claim, on January 11, 2010. The writ was issued from Lake County

---

[1] We adopt and rely upon the Rule 7052 Findings of Fact, appended, which Sterling proposed.

4

court on Austgen's request and on behalf of Southlake to collect on April 27, 2010, although the writ did not lead to an arrest until March of 2011[2].

The basis of the writ was Sterling's failure to appear on supplemental proceedings issued to collect on the judgment.[3]  Southlake was represented by Austgen Kuiper & Associates ("Austgen")[4], attorneys.   The supplemental proceedings and writ were issued after Sterling had filed Bankruptcy and after Sterling had been discharged.  Sterling was able on a Monday (after spending the week-end in jail) to reach her Bankruptcy lawyer, who filed a emergency petition to quash the writ and allow for her release.[5]

Sterling sought relief in state court, which Austgen and Southlake opposed, arguing the Bankruptcy Court below in a contempt hearing was the sole remedy, see *Cox v Zale Delaware*, 239 F 3d 910 at 916 (7th Cir., 2001).  Sterling thereafter sought relief in Bankruptcy Court below.

---

[2] Sterling had a flat tire, and when the Indiana patrol assisted her, the writ came up.  Sterling testified she had no idea such a thing had been issued.
[3]  The bankruptcy court correctly believed Sterling was never actually served with the supplemental proceedings.
[4] As noted below, the Firm changed its name several times in the eleven year proceedings, so we refer to them as "Austgen".  In order to avoid confusion, however, the lawyer for Southlake is also named Austgen, albeit no relation.
[5] Originally, the creditor's attorney testified they went to Court to obtain Sterling's release from jail.  They later admitted this was 'mistaken'.

5

## NATURE OF THE PROCEEDINGS BELOW

Sterling filed a series of Motions to re-open the Chapter 7 case and to hold the creditor, Southlake, and their lawyers, Austgen, in contempt. The matter was converted into a Adversary Proceeding, 12-02102, and proceeded through very limited discovery and eventually a Trial on November 12-13, 2014. Over a year and a half later[6], the Court below granted a directed finding to both defendants and this appeal ensued.

## BOTH DEFENDANTS ARGUE THEY CAN'T BE HELD RESPONSIBLE FOR THE CONSEQUENCES OF THEIR OWN AND EACHOTHER'S ACTIONS

There is no dispute that Sterling was arrested post-discharge and in an attempt to collect a pre-discharge debt. The creditor and their lawyers each argue that they can't be held responsible for their own – and more particularly – for each other's actions. In other words, Southlake argues they can't be held responsible for their lawyer's actions in court and Austgen argues they can't be held responsible for Southlake's diligence or lack of diligence.

Although Southlake's plead answer and extensive Affirmative defenses argued a different defense, and originally denied receipt of the Bankruptcy notice and Bankruptcy discharge, Southlake admitted that the notices were sent to the correct address, that they did not docket Bankruptcy mail, and that they simply

---

[6] "This was a very difficult case for the court to conceptualize and determine" "which is why it took so long to enter this decision", Memorandum, p 2.

6

sent the notice(s) on to Austgen, their lawyers, to deal with. They argue that even if they had notice of the Bankruptcy discharge, they did not willfully act to arrest Sterling since they left the matter in their lawyer's hands without any reason to review or supervise their actions.    Austgen "lost" the Sterling office/collection "file" during this Litigation, and they carefully denied 'seeing' the discharge notice in the 'lost file'; they did not affirmatively deny under Oath that Southlake had mailed them the discharge or Bankruptcy notices; they simply said the notices were not 'in' the 'file'. Austgen argued they are not responsible because they did not act willfully because they lacked specific knowledge of the Bankruptcy when they sought the arrest warrant against Sterling. Southlake argues they can't be held responsible for the actions of their agent, Austgen; Austgen argues they can't be held responsible for the actions of their principal, Southlake. The Bankruptcy Court agreed with this argument and determined that *neither* Austgen nor Southlake (singly or jointly) could be held responsible for Sterling's three days in Lake county jail.

## WILLFULLNESS DOES NOT REQUIRE INTENT TO HARM; ALL IT REQUIRES IS THAT THE ACTOR ACTED WITH PURPOSE AND NOT 'ACCIDENT'; HERE, THE DEFENDANTS ASKED THE STATE COURT TO ARREST STERLING IN ORDER TO FORCE HER TO PAY THE DEBT

As the Court below noted, this is not a case where Sterling must prove either Austgen or Southlake intended to harm Sterling. Willfulness is not about "intent to harm" anyone. Southlake and Austgen can be held in contempt for willfully

7

violating the discharge if (a) they knew about the Bankruptcy and/or discharge (b) they intended to issue the supplemental proceedings and/or writ to arrest Sterling. *In re Barr*, 457 BR 733 at 734 (ND Ill., 2011), *Randolph v IMBS*, 368 F 3d 726 at 728 (7th Cir., 2004).

In other words, if the writ was issued accidentally or somehow mistakenly, that would be a different situation. However, Austgen and Southlake requested the writ be issued in a written Motion, see Exhibit 3W, 3X[7]. They did so intentionally in order to try and force Sterling to pay the debt. There is no doubt the actions taken by the defendants were not 'accidental' or mistaken.

## THERE IS NO DISPUTE THAT SOUTHLAKE RECEIVED THE BANKRUPTCY NOTICE AND DISCHARGE NOTICE WHICH WAS SENT AND ADDRESSED BY THE MATRIX TO THE CORRECT ADDRESS

There is no doubt --- and the Bankruptcy Court below agreed --- that the creditor, Southlake, was sent the Bankruptcy notice on September 30, 2009 and the discharge order on January 11, 2010; they were sent by the matrix which contained the correct address, zip code, and information for Sterling. Notice to Southlake at its corporate facility, its workout club, or even a satellite office is more than sufficient. See *In re Glenwood Medical Group*, 211 BR 282 at 284-7 (ND Ill., Eastern Div., 1997). Bankruptcy, which operates on surface mail notice

---

[7] For example, Pam Rust testified Austgen acted on behalf of Southlake intentionally, Transcript, p 109, as did Austgen himself, p 139.

8

to creditors, recognizes a *strong* mail delivery presumption.   In order to contradict this presumption, a mere denial is not sufficient.   *In re Glenwood Medical Group,* 211 BR 282 at 284-7 (ND Ill., Eastern Div., 1977), *In re Malandra,* 206 BR 667 at 673 (ED NY., 1997).  The bankruptcy Court's records can be relied upon without more and the employee of the Bankruptcy court need not testify. *In re Longardner & Assoc.,* 855 F 2nd 455 at 459 (7th Cir., 1987).  Sterling is not required to prove that creditor, Southlake, even opened or looked at the bankruptcy notice or the discharge.   *In re Kingen v Johnson, Bunce & Noble.,* 2004 WL 298609 (CD., ILL).


There is simply no doubt that the Matrix (Exhibit 3U, 3V) indicates notice was sent to Southlake at their correct address; they obviously knew about the Bankruptcy.

## SOUTHLAKE "DELEGATED" THE ENTIRE MATTER IN COURT TO THEIR AGENT, AUSTGEN; SOUTHLAKE'S ORDINARY COURSE OF BUSINESS WAS TO SEND THE NOTICES ONTO THE LAW FIRM

There is no dispute that Austgen worked for Southlake in Court trying to collect a debt for Southlake.  Southlake's principal testified once the matter was 'handed off' to Austgen he did nothing else, everything was "outsourced" to Austgen (Transcript, p 46-50).  He reviewed no pleadings, did not supervise or review writs being issue for arrest, did not read or review any intermittent reports (if

9

any); all he involved himself was potential settlements. He chose to act via Austgen entirely. Although Southlake does not remember a particular piece of mail from many years ago, Southlake's principal repeatedly testified his normal, ordinary course of business was to simply take the Bankruptcy notices received from time to time and mail it out to Austgen, the law firm (for ex., Transcript, p 67-70). Austgen did not log in any Bankruptcy notices received or sent (for ex., Transcript, p 143).

There is no dispute that Southlake's course of business when receiving Bankruptcy notices was to send them onto Austgen without a cover letter or comment. There is also no dispute that Southlake "outsourced" or delegated without any supervision or review the collection activities of their agent, Austgen, in and outside of court, to collect the debts owed Southlake.

10

## AUSTGEN AND SOUTHLAKE SHOULD BE HELD JOINTLY RESPONSIBLE; THEY CHOSE A RECKLESS COURSE OF BUSINESS THAT LEAD TO A INCARCERATION AND ARREST IN A DECADES-LONG JOINT EFFORT AT COLLECTION FROM STERLING

Southlake received the bankruptcy notices at their correct address. They seek to escape responsibility by saying they are not responsible for their agent acting in Court even though their agent was in state Court acting for Southlake's benefit and in Southlake's name.   Austgen – despite having no log in/out procedure, despite Southlake's ordinary business procedures of mailing them the notice, and despite mysteriously not having the physical 'collection folder' at Trial --- claims they can escape responsibility for seeking Sterling's arrest because they have no record of having received the notices from Southlake.


Southlake's position, of course, is the weakest.   The mail delivery rule conclusively determines that Southlake received the notice of bankruptcy and discharge. *Southlake in fact was in state Court seeking arrest* of Sterling. *They were in fact in the Court --- via their disclosed agent,* Austgen.   Austgen spoke for Southlake.   The state Court pleadings were in Southlake's name.   Southlake chose to let someone speak for them ---- that they did not review the pleadings, progress of the case, or events is not a defense to the undisputed point that Southlake received the notices and Southlake in fact was in state Court and in fact requested an writ of arrest against Sterling.

11

Let us suppose that Southlake received the or "a" bankruptcy notice[s] and sent them via mail to Austgen and let us suppose Austgen misfiled them in their collection office, containing thousands of collection files. Southlake receives correspondence on status, including rules to show cause and arrest warrants from Austgen. Southlake admits they usually didn't even glance at the reports, much less docket them in their files or read them carefully. So in our example, Southlake sent the bankruptcy notice and was told that their agent was in Court issuing a writ of arrest for a debtor. Does Southlake call their agent, the attorney, and remonstrate: "there is a bankruptcy for this guy, why did you proceed and not close your file?" Southlake's doesn't even read its own mail, doesn't supervise its agents, doesn't direct its agent, delegates everything to its agent, but then argues "I am not responsible" for the agent's actions. (Even after Sterling was jailed for three days and released on a emergency motion, neither Sterling nor Austgen bothers to docket or note their "reports" or "files" of this fact). The trial Court's allowing Southlake to escape responsibility under this scenario for Sterling's arrest is unconscionable and an error of law.


"(T)he acts of an agent are considered in law to be the acts of the principal". See *Buckner v Atlantic Plant Maintenance,* 182 Ill 2nd 12 (1992), cited by the Bankruptcy Court in *In Re Vazquez v Sears Roebuck & Co.,* 221 BR 222 at 231 (ND Ill., 1998). When Austgen appeared in Court and sought a writ of arrest for

Southlake against Sterling, *Southlake was acting, Southlake was in Court, and Southlake knew that there had been a bankruptcy discharge* because Southlake received the orders. Thus, Southlake has acted willfully --- it intended to act via counsel in Court to collect the debt and it knew about the bankruptcy order and discharge.

Southlake and Austgen are joint actors in Court – one seeks collection, the other seeks contingency fees off that collection. The Bankruptcy Court in *In re McClure*, 430 BR 358 at 366 (ND Texas, 2010), decisively rejected the trial Court's view as a Matter of Law, and held the lawyer and the creditor are joint actors in working together to collect the debt and violate the discharge injunction. In *McClure,* the court said,

> As to the argument that neither BOA nor CFG is liable because the violation of section 524(a)(2) by each could not have occurred but for the improper acts or omissions of the other, to accept such an argument would insulate from liability for violation of section 524(a)(2) (or 362(a)) any creditor using a collection agent, as well as the agent itself. There could be no collection effort absent the act of the collection agent, and the agent could not act without the creditor's referral. To conclude that the law is as BOA and CFG would have it would strip the protections afforded to debtors by applicable provisions of the Code of any teeth. **"A failure to hold [BOA] and CFG jointly and severally liable would create an incentive for either of the defendants to stick their heads in the ground, ostrich-like, and refuse to tighten up their internal policies."**…
> On the contrary, the law is clear that a creditor that employs another to collect a debt in violation of section 524(a)(2) or section 362(a) is itself guilty of a stay violation…
> Likewise, if the party undertaking the collection effort knows of the debtor's bankruptcy, it, as well, clearly knowingly violates the applicable injunction…

In *In Re Walker*, 180 B.R. 834 at 844-5 (WD Louisiana, 1995) another Bankruptcy Court rejected the trial Court's view. The *Walker* Court held that the reckless

13

business practices of the creditor are not insulated by the agent's actions in or outside of Court to collect. The *Walker* court said at 844-5

> the problem "could have easily prevented the B.C.C. from its collection activities by a simple phone call or letter informing the latter of the Walker's discharge. Instead, M & M Dodge did nothing and waited for the B.C.C. to uncover the fact themselves...To further refute this defense, M & M Dodge's own internal bookkeeping and business practices would seem to facilitate such a dereliction and blatant lack of respect for the bankruptcy laws".

The creditor here, Southlake, washed its hands of what Austgen was doing in state court. Was a arrest warrant appropriate? Was Sterling even served with the citation? *Did they check with Austgen after they received a bankruptcy notice to make sure that Austgen ceased any collection work?* The answer is that the voluminous testimony of arrogance and conceit by Southlake's principal discovered he didn't even read the status reports from Austgen,[8] much less supervise what his agent was doing in his own name.

This leads us to Austgen, the collection attorney. As we argue below, Mr. Austgen's testimony is more than suspect, but absent a clear error we realize this Court, sitting as an Appeals Court, is not likely to overturn on credibility. However, *even if we accept* Austgen's testimony, *his Firm is jointly liable for the consequences of his own reckless record keeping and disregard of the situation.* Austgen received notices of bankruptcy and did not log them anywhere.

---

[8] "Cursory reviews" says Southlake's principal, for ex., Transcript, p 70

14

Austgen received notices of bankruptcy and did not log them in the files. Austgen says they checked with PACER twice, but if this was true, then they obviously would have seen Sterling's local Chapter 7 bankruptcy in the period between September 30, 2009 and March of 2011 when Sterling was arrested, a period of some year and a half. Yet Austgen sought a rule and a writ of arrest on December 14, 2009, January 21, 2010, April 27, 2010, May 21, 2010 (see Exhibits 3S, 3X, 3Y, 3Z). And after the writ was issued on April 27, 2010 until the arrest was effectuated in March of 2011, Austgen did nothing to check on the situation. Austgen's principal (and their clerks) testified that he did not report and Southlake did not inquire on the day to day requests in state Court, including asking the state Court to arrest someone (Transcript, p 140). The bottom line is that the ordinary course of Southlake's business operation in mailing the notices to Austgen should be accepted as true; it is after all un-contradicted.

Normally, an agent whose conduct "renders the principle liable is also liable for his own tortuous acts". See *In re Vazquez v Sears Roebuck & Co., id.* It is the *combination* of what both Southlake and Austgen did that led to Sterling being incarcerated for three days. Austgen was delegated the entire file, all decision making, and they knew their erstwhile client took no day to day interest in the proceedings. They sought collection and they sought the arrest warrant on

15

behalf of Southlake and they should be held jointly liable for their joint actions and omissions in Court.

## THERE IS NO AFFIRMATIVE DENIAL OR PROOF THAT AUSTGEN DID NOT GET THE NOTICES REGULARLY SENT TO THEM BY SOUTHLAKE; SOUTHLAKE SAID THEY REGULARLY SENT THEM TO AUSTGEN

Mr. Austgen, the principal of the Austgen firm, and his clerks testified. It is not essential for this court, sitting as a Appeals Court, to review Mr. Austgen's lack of credibility but we would be remiss in not point out problems with his testimonial evidence. The "collection file" for Sterling mysteriously became 'missing' during this Litigation. What was in the file? Was the Bankruptcy notice and discharge notice in the file? The file was of course under the exclusive control of the Austgen firm, and what it contained or did not contain is now a mystery. Over a period years there were over twenty Court appearances; no emails to the client were 'located' or produced.[9] However, Sterling requested in discovery that Austgen turn over its collection file(s) so that we could determine and evaluate the procedures used in the ordinary course of their extensive collection business. Austgen categorically refused (see Exhibit 5H, 5I) and the Court below upheld this refusal.

At the same time, Southlake testified that they *regularly* took the notices, stuck it into an envelope, and mailed them to Austgen to handle as part of their usual

---

[9] Transcript, p 118

16

and customary business procedure (for ex., Transcript, p 67-70). Austgen did not log in any Bankruptcy notices received (Transcript, p 143), and did not even note it their Excel records when Sterling was arrested, released, and presumably their file would have been finally closed after eleven years (Transcript, p 145). Austgen claimed that "by my personal review of the physical file in my law firm I did not see" there was any bankruptcy notices in it (Transcript, p 148) – however, of course, the "physical file" was lost or missing and never produced. And in eleven years of litigation, *one* Excel "report" on Austgen collections for Southlake was produced *by Southlake and not the Austgen firm* (Exhibit 4I). However, at trial, it "turned out" that the form produced by Southlake was "authored" by Austgen (Transcript, p 53-5). Where are the others in the eleven year length of this collection effort? Austgen tried to explain the care of the Firms's ordinary course of business, but never produced any of the other collection files, so there is no way to challenge this breezy summary. We know the "claim notes" (Exhibit 4I) are inaccurate. We know that the file is missing. We know that the jacket is missing. We know that there is no record PACER was checked. We know that Austgen kept no log of incoming bankruptcy notices. And we know that even after Sterling suffered three days of incarceration and was released by an Emergency Motion that Austgen did not note their file.

If this Adversary had not occurred, Austgen could have continued to seek collection.

17

There is no proof that Austgen did not receive the Bankruptcy notices and discharge which Southlake said they --- as a regular course of doing business – mailed to them. The trial Court's presumption that Austgen did not receive the notice erred.

## CONCLUSIONS

Under the Trial Court's Memorandum, no one is responsible. Under the Trial Court's view, Southlake got the notice but who knows if Austgen got it from Southlake and since Austgen was in state Court and not Southlake both escape responsibility for the consequences of their joint effort to collect a $518 debt over eleven years which resulted in three days of incarceration. At the very least, Southlake was in state Court, acted in state Court, asked for a writ of arrest, obtained a writ of arrest, and did all these things post-discharge despite having received the notice. Southlake acted, was present, and these actions were done in their name. The fact that Southlake's agent did them for Southlake is not a defense. These actors jointly and severally acted to force Sterling to pay this debt subsequent to the Bankruptcy notice and subsequent to the Bankruptcy discharge. The trial Court erred, and we pray this Honorable Court reverse the trial Court's Rule 52(c) finding, enter Judgment for Plaintiff Sterling, and remand for a hearing on damages before a different Bankruptcy Judge.

Respectfully Submitted

_____

Samuel A. Shelist, attorney for Jacqueline Sterling